UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DELLA M.,

                        Plaintiff,

v.                                                                         3:18-CV-1281(TWD)

COMM'R OF SOC. SEC.,

                        Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

LACHMAN & GORTON                            PETER A. GORTON, ESQ.
 Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.            FERGUS J. KAISER, ESQ.
 Counsel for Defendant
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278


THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Della M. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9 and 10.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion

for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1973, making her 40 years old at the alleged onset date and 44 years old at the time of the ALJ's decision. Plaintiff reported completing the eighth grade and obtaining a GED. She has past work as a home attendant. Plaintiff initially alleged disability due to anxiety, naval hernias, osteoarthritis, sleep apnea, depression, numbness in the left side of her body, and migraines.

### B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits as well as Supplemental Security Income on March 31, 2015, alleging disability beginning December 20, 2013. (T. 15, 34, 98-99, 180-93.) [1] Plaintiff's applications were initially denied on July 30, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). (T. 72-105.) She appeared at an administrative hearing before ALJ Kenneth Theurer on July 24, 2017. (T. 31-71.) On October 6, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 12-30.) On September 19, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

## C. The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law. (T. 17-26.) Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018, and she has not engaged in substantial gainful activity since December 20, 2013, the alleged onset date. (T. 17.) Her obesity, osteoarthritis, chronic obstructive pulmonary disease/asthma, migraine headaches, posttraumatic stress disorder ("PTSD"), generalized anxiety disorder, and depressive disorder are severe impairments. (*Id*.) However, Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 19-20.) The ALJ then found Plaintiff has the residual functional capacity ("RFC") to perform sedentary work:

> in that she can occasionally lift and carry ten pounds, sit for approximately six hours, stand or walk for approximately two hours in [an] eight hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling. She should avoid frequent exposure to extremes of cold or heat and respiratory irritants. She can tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations, 1993 Edition; should avoid work outdoors in bright sunshine and work with bright or flickering lights such as would be experienced in welding or cutting metals. She retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; can relate to and interact with others to the extent necessary to carry out simple tasks but should avoid work requiring more complex interaction or joint effort to achieve work goals, she should have no more than incidental contact with the public and can handle reasonable levels of simple work-related stress in that she can make occasional simple decisions directly related to the completion of her tasks in a stable, unchanging work environment.

(T. 20.) Plaintiff is unable to perform any past relevant work, but she can perform other jobs existing in significant numbers in the national economy. (T. 24-25.) The ALJ therefore concluded Plaintiff is not disabled. (T. 25-26.)

## D. The Parties' Briefings on Their Cross-Motions

In her brief, Plaintiff first argues the ALJ improperly substituted his judgment for undisputed medical opinions that Plaintiff has limitations in the ability to maintain a regular schedule. (Dkt. No. 9 at 8-14.) Plaintiff further argues the ALJ failed to properly weigh the medical opinions from treating physician Darlene Denzien, D.O., non-examining consultant T. Harding, Ph.D., and examining consultant Amanda Slowik, Psy.D. (*Id*. at 10-16.) Plaintiff also argues the ALJ failed to properly account for her migraines because he did not address the frequency and/or duration of the migraines and the extent to which they impact Plaintiff's ability to work. (*Id*. at 17.) Finally, Plaintiff contends the Step Five determination "is not supported by substantial evidence because it is based on the testimony of a vocational expert whose testimony was based on a faulty hypothetical." (*Id*. at 17-18.)

In his brief, Defendant argues the ALJ properly assessed the medical evidence and sufficiently considered Plaintiff's migraines. (Dkt. No. 10 at 9-15.) Defendant also maintains the ALJ's Step Five determination is supported by substantial evidence. (*Id*. at 15-16.)

On reply, Plaintiff reiterates that the medical evidence does not provide substantial support for the ALJ's RFC determination and that Plaintiff's daily activities do not "compare to the equivalent of a full-time work schedule or stressors" of full-time work. (Dkt. No. 11-1 at 1.) Plaintiff also maintains her psychiatric limitations are well-supported and the ALJ failed to incorporate any limitations related to maintaining a schedule, improperly equating a "moderate" limitation with no limitation at all. (*Id*. at 3.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence, Plaintiff's Impairments, and the RFC

#### 1. Applicable Law

##### a. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

##### b. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician

7

issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. §§ 404.1527(c) and 416.927(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### 2. Relevant Opinion Evidence

In May 2015, psychiatric consultative examiner Dr. Slowik observed Plaintiff was cooperative with a coherent and goal-directed thought process, full range affect, anxious mood, mildly impaired attention and concentration due to her distractibility and limited intellectual functioning, and moderately impaired recent and remote memory skills due to limited intellectual functioning. (T. 314-15.) Dr. Slowik diagnosed PTSD and the need to rule out a specific learning disorder. (T. 316.) She opined Plaintiff was not limited in the ability to follow and understand simple directions and instructions, perform simple tasks independently, or relate adequately with others. (*Id*.) Plaintiff was mildly limited in the ability to maintain attention and

8

concentration, learn new tasks, make appropriate decisions, and appropriately deal with stress, moderately limited in the ability to perform complex tasks independently, and markedly limited in the ability to maintain a regular schedule. (*Id*.) Dr. Slowik indicated these difficulties were caused by fatigue, pain, and anxiety and the results appeared to be consistent with psychiatric problems which might significantly interfere with Plaintiff's ability to function on a daily basis. (*Id*.) The ALJ afforded partial weight to Dr. Slowik's opinion, but rejected the opined marked limitation in maintaining a regular schedule, "because it is not supported by the fact that [Plaintiff] is able to care for three children and her elderly parents, drive, shop, and attend her medical appointments." (T. 21, 320, 488, 506.)

In May 2015, internal medicine consultative examiner Gilbert Jenouri, M.D., noted Plaintiff appeared in no acute distress, had a normal gait and stance, and was unable to walk on her heels and toes without difficulty; her squat was only 50 percent; she used no assistive devices; she needed no help changing for the exam or getting on and off the exam table; and she was able to rise from a chair without difficulty. (T. 320.) She had limited range of motion in the lumbar spine and straight leg raise was positive bilaterally at 40 degrees and confirmed seated; she had bilateral sciatic notch tenderness to palpation, limited range of motion in the hips, physiologic and equal deep tendon reflexes in the upper and lower extremities with no sensory deficit noted, intact hand and finger dexterity, and full grip strength bilaterally; and her left lower extremity strength was slightly reduced. (T. 321.) Dr. Jenouri diagnosed low and upper back pain, osteoarthritis, obstructive sleep apnea, history of anxiety and depression, hypertension, diabetes, and asthma. (T. 322.) He opined "mild restrictions walking, standing, sitting long periods, bending, stair climbing, lifting, and carrying" and indicated Plaintiff should avoid smoke, dust, and other known respiratory irritants. (*Id*.) The ALJ afforded partial evidentiary

9

weight to Dr. Jenouri's opinion based on his programmatic expertise and its general consistency with the evidence in the record. (T. 21.) The ALJ indicated, however, that he rejected the mild restriction in prolonged sitting because it was contradicted by Plaintiff's broad range of daily activities. (*Id.*) The ALJ noted he had accounted for the abnormal findings identified by Dr. Jenouri in limiting Plaintiff to a range of sedentary work. (*Id.*)

In June 2015, treating provider Dr. Denzien noted Plaintiff's chronic obstructive pulmonary disease, hypertension, morbid obesity, orbital myositis, chronic fibromyalgia, and chronic back pain. (T. 449.) Dr. Denzien indicated these conditions would cause pain, fatigue, diminished concentration and work pace, and the need to rest at work with Plaintiff being off-task more than 33 percent of the day and absent more than four days per month. (T. 449-50.) She opined Plaintiff could sit for approximately two hours out of an eight hour day, should change positions every 15 minutes, could stand/walk for approximately one hour out of an eight hour day, and could occasionally lift up to ten pounds with the limitations present since September 2014. (T. 450.)

It appears Dr. Denzien also submitted an assessment of Plaintiff's mental limitations related to depression in June 2015, though it is not clearly dated. (T. 453-55.) Dr. Denzien indicated medium limitation in maintaining attention and concentration, performing activities within a schedule, maintaining regular attendance and/or being punctual within customary tolerances, completing a normal work day and work week without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and getting along with coworkers; more than slight limitation in interacting appropriately with the general public; and marked limitation in accepting instructions and responding appropriately to criticism from supervisors, and responding

appropriately to ordinary stressors in a work setting with simple tasks. (T. 454.) She opined Plaintiff would be off-task more than 15 percent but less than 20 percent of the day and absent two days per month with limitations present since April 2015. (T. 455.)

The ALJ afforded limited weight to these assessments from Dr. Denzien, noting they were not supported by objective evidence and they were "merely checkbox form responses without adequate narrative explanation or references to clinical and diagnostic findings to support the conclusions." (T. 22, 448-55.) The ALJ also indicated Dr. Denzien's assessments were based in part on impairments that had not been established as severe and pointed out Dr. Denzien noted Plaintiff was treating her back pain with ibuprofen. (T. 22, 358.) The ALJ further noted Plaintiff stated her asthma was good, her blood pressure was controlled, she reported improvement in her depression, and she denied experiencing any migraines. (T. 22, 324.) The ALJ indicated progress notes described Plaintiff's orientation, mood and affect as normal and that these findings did not support the degree of functional limitations provided by Dr. Denzien. (T. 22, 364.)

In July 2015, as part of the initial determination, consultant Dr. Harding noted there was a record source statement opining marked limitation in maintaining a regular schedule. (T. 74, 82, 87, 90-91.) Dr. Harding opined Plaintiff had mild restriction in activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (T. 76-77, 80-82, 89-91, 93-95.) More specifically, Dr. Harding indicated a moderate limitation in maintaining regular attendance and further noted the marked limitation in maintaining a regular schedule was not well-supported by objective evidence. (T. 80, 82, 93, 95.) The ALJ afforded significant weight

to Dr. Harding's opinion based on her programmatic expertise and its consistency with Dr. Slowik's evaluation. (T. 22.)

### 3. Analysis

Plaintiff argues the ALJ's analysis of the medical opinions and Plaintiff's RFC and impairments is not supported by substantial evidence because of various alleged errors. (Dkt. No. 9 at 8-17.) The Court does not find these arguments persuasive for the following reasons.

First, Plaintiff argues the opinions from Dr. Denzien, Dr. Slowik, and Dr. Harding all assess limitations to maintaining a regular schedule/attendance and the ALJ rejected these limitations without relying on any contrary supporting medical opinion or including any limitations to maintaining regular attendance. (Dkt. No. 9 at 8-14.) Plaintiff claims the ALJ's analysis is also not sufficiently overwhelmingly compelling to allow him to reject these opinions and "Plaintiff's mental conditions are too complex to permit the ALJ to substitute his lay opinion for that of three competent medical opinions." (*Id*. at 10-11.)

Rather than substituting his own lay opinion, the Court finds that the ALJ relied on the evidence of record in finding significant limitations in maintaining a regular schedule/attendance were not supported. (T. 20-24.) The ALJ's RFC determination explicitly indicates Plaintiff retains the ability to regularly attend to a routine and maintain a schedule and the Court finds that the ALJ's analysis sufficiently explains his reasonable conclusions regarding the opined limitations in maintaining regular attendance. (T. 20-21.) Specifically, the ALJ explained he afforded partial weight to Dr. Slowik's opinion, but rejected the marked limitations for maintaining a regular schedule, and pointed to Plaintiff's ability to care for three children and her elderly parents, drive, shop, and attend her medical appointments. (T. 21, 313-18, 320, 488, 506.) The ALJ indicated these activities showed Plaintiff could maintain a schedule. (T. 21.)

Indeed, Plaintiff's counseling records and May 2015 function report indicated she cooked simple meals four times a week, drove, went grocery shopping with her son, paid bills, went to arts and crafts activities at least twice a week, and cared for multiple pets by providing water and food and cleaning cages. (T. 21, 245-49, 744.) Further, Dr. Slowik's opined limitation "did not bind the ALJ . . . who was entitled to exercise discretion in reviewing the record evidence in its totality[.]" *Barry v. Colvin*, 606 F. App'x. 621, 624 (2d Cir. 2015) (citing 20 C.F.R. §§ 404.1527(d)(2), 404.1529(c)(4); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); SSR 96-7p, 1996 WL 374186, at *5).

Second, Plaintiff maintains Dr. Denzien's treating opinion is supported by the objective evidence and the ALJ did not have a substantial basis to reject her opinion because Dr. Harding's opinion (on which the ALJ relied) found the same or more severe limitations as Dr. Denzien and did not define the term "moderate." (Dkt. No. 9 at 15-16.) However, as Defendant points out, the marked limitation in maintaining a regular schedule cited by Plaintiff was not opined by Dr. Harding, but rather "Dr. Harding's recitation of the opinion offered by the consultative examiner, Dr. Slowik." (Dkt. No. 9 at 10, n. 1, 13-14; Dkt. No. 10 at 11; T. 82, 316.) As Defendant indicates, Dr. Harding actually then stated this opinion was not well supported by objective evidence. (Dkt. No. 10 at 11; T. 82.)

The ALJ explained Dr. Harding's opinion was given significant weight because of her programmatic expertise and its consistency with Dr. Slowik's evaluation. (T. 22, 313-18.) Although the ALJ did not explicitly discuss Dr. Harding's indication that the record source statement from Dr. Slowik opining a marked limitation in maintaining a regular schedule was not well-supported by objective evidence, the ALJ's analysis of Dr. Harding's opinion is consistent with his analysis of Dr. Slowik's opinion and clearly reflects that the opined marked limitation

13

was not found to be supported by the evidence. (T. 74, 82, 87, 90-91, 95.) The ALJ's analysis indicates he relied on the opinions from Dr. Slowik and Dr. Harding in determining Plaintiff's mental RFC, and he explained why only partial weight was given to Dr. Slowik's opinion and why significant weight to Dr. Harding's opinion. (T. 21.) The ALJ's analysis further explained multiple reasons why he afforded limited weight to Dr. Denzien's opinions. (T. 22, 324, 364, 448-55.)

It was the ALJ's responsibility to weigh the various opinions along with the other evidence and determine which limitations were supported by the overall evidence of record. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) (same); *Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("'Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)); *West v. Comm'r of Soc. Sec.*, 15-CV-1042 (GTS/WBC), 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016), *Report and Recommendation adopted by* 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016) (citing *Matta*, 508 F. App'x at 56); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). The ALJ's analysis here reflects a full consideration of the evidence including the medical opinions to determine Plaintiff's RFC. (T. 20-24.)

Third, although Plaintiff argues her performance of daily activities is not consistent with full time work or the type of strict, routine, schedule required in the workplace, the ALJ's analysis adequately explains why the record does not support the scheduling limitations opined by Dr. Slowik and Dr. Denzien. (Dkt. No. 9 at 11-12; T. 21-24.) This analysis includes the ALJ's summary of Plaintiff's treatment records such as progress notes from March and May 2015 indicating "her depression was better, as evidenced by her ability to join a support group and leave her home more frequently" and that her depression improved with treatment, which the ALJ found undermined Dr. Denzien's conclusion that Plaintiff had medium-to-marked mental limitations. (T. 23-24, 324, 336.) The ALJ further summarized counseling records indicating Plaintiff was making some improvement in reaching her treatments goals in April 2016 and that she reported she was doing "okay" in May 2017. (T. 24, 615.)

Fourth, the Court is not persuaded by Plaintiff's assertion that the ALJ made a major factual error in first stating Plaintiff could attend her medical appointments but subsequently indicating she had difficulties maintaining her appointments. (Dkt. No. 9 at 12; T. 23.) The ALJ noted Plaintiff's progress notes from January 2015 indicated that, although she reported worsening depression, she acknowledged she had stopped taking her medications and failed to attend scheduled appointments. (T. 23, 349.) The ALJ then cited subsequent treatment notes from March and May 2015 indicating Plaintiff reported her depression improved with treatment. (T. 23, 324, 336.) As Defendant argues, the record does not document chronic absences despite Plaintiff's citation to a January 2015 missed appointment. (Dkt. No. 10 at 12, n. 4; T. 354, 446.)

Finally, the Court finds the ALJ properly considered and accounted for Plaintiff's migraines in determining her RFC. (T. 20-24; Dkt. No. 9 at 17.) Plaintiff maintains the ALJ did not address the frequency and/or duration of her migraines, but the ALJ's RFC analysis includes

15

explicit discussion of Plaintiff's treatment for migraine headaches including that progress notes indicated they were stable and even improved on their own without use of medication with neurology records noting the majority of Plaintiff's issues appeared to be related to noncompliance. (T. 23, 324, 332, 336, 677, 688.) As Defendant argues, the ALJ cited evidence contradicting any claims that Plaintiff's migraines were severe enough to require additional limitations than those included in the RFC; and the RFC included limitations specifically designed to account for Plaintiff's migraines, which the record did establish were associated with photophobia and phonophobia. (Dkt. No. 10 at 15; T. 23, 299, 324, 332, 336, 338, 636, 640, 677, 687-88, 694.)

For the reasons above, the Court finds the ALJ's analysis of Plaintiff's RFC, her impairments, and the medical opinions is supported by substantial evidence. Remand is therefore not required on these bases.

### B. The ALJ's Step Five Determination

#### 1. Applicable Law

The burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). An ALJ may rely on a vocational expert's testimony "regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise

inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. July 7, 2009) (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

### 2. Analysis

At Step Five, the ALJ found, based on vocational expert testimony, that Plaintiff can perform jobs existing in significant numbers in the national economy including document preparer, addresser, and lens block gauger. (T. 24-25, 63-64.) Plaintiff contends the RFC determination and Step Five determination are not supported by substantial evidence because the RFC failed to account for the full extent of her physical and non-exertional limitations including those in staying on task/work pace (caused by migraines and psychiatric impairments) and maintaining a regular schedule/attendance. (Dkt. No. 9 at 17-18.) The Court is not persuaded by these arguments. As indicated in Section III.A. of this Decision and Order, the Court finds the ALJ's analysis of the opinion evidence, Plaintiff's impairments, and the RFC is supported by substantial evidence. The hypothetical question posed to the vocational expert reflected the ALJ's RFC determination and Plaintiff has not established further limitations beyond those included in the RFC. (T. 20, 63-64.)

For the reasons above, the Court finds the ALJ's Step Five determination is supported by substantial evidence and remand is therefore not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED**.

Dated: March 3, 2020
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge